# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:05cv322

| | |
|---|---|
| CHRISTOPHER L. HYDER, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| Vs. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| HUBBELL DISTRIBUTION, INC., ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss (#8), plaintiff's timely Response (#15), and defendant's Reply (#16). Having considered defendant's motion and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.  Background

This is an employment discrimination action. In pertinent part, plaintiff contends in his First Claim for Relief that defendant discriminated against him in violation of the Americans with Disabilities Act ("ADA"). In the Second Claim for Relief, plaintiff contends that defendant discriminated against him on the basis of his gender in violation of Title VII of the Civil Rights Act ("Title VII"). Defendant has moved to dismiss the Second Cause of Action, contending that plaintiff has failed to first exhaust his administrative remedies by failing to file a charge of discrimination within 180 days.

Plaintiff alleges that he worked as the only male "Office Group Lead" for defendant from April 1999 to August 2002. Complaint, at ¶ 25. He claims that in August 2002, he was "summarily moved" from that position, replaced by a female, and transferred to a "Floor

-1-

Group Lead" position, Complaint ¶ 26, which is apparently a less desirable job. Complaint, at ¶ 29. Three (3) years later, plaintiff was suspended and demoted from the Floor Group Lead position on April 12, 2005. Complaint, at ¶¶ 21-22.

Plaintiff's contention in his first EEOC charge of discrimination, filed on June 15, 2005, was that the 2005 suspension and demotion was solely based on his alleged disability. Complaint, at ¶¶ 32-39. Plaintiff received a right to sue letter on this charge. The plaintiff later filed a sex discrimination claim with the EEOC on October 4, 2005, which was denied by the EEOC as untimely on October 14, 2005. See Defendant's Brief in Support, Exhibits A and B.

## II.    Standard Applicable to a Motion to Dismiss

Defendant has moved to dismiss under Rules 12(b)(1) and 12(b)(6). Under the reasoning of Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), some circuits have found that a timely charge of discrimination is not a jurisdictional prerequisite, but a defense subject to waiver and tolling, which must be addressed under Rule 12(b)(6). Jones v. Runyon, 91 F.3d 1398, 1399 n. 1 (10th Cir.1996)(collecting cases). In the Fourth Circuit, it appears that the failure to exhaust administrative remedies remains a jurisdictional issue

> Title VII of the Civil Rights Act of 1964 creates a federal cause of action for employment discrimination. Before a federal court may assume jurisdiction over a claim under Title VII, however, a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), which include an investigation of the complaint and a determination by the EEOC as to whether "reasonable cause" exists to believe that the charge of discrimination is true.

Davis v. North Carolina Dept. of Correction 48 F.3d 134, 137 (4th Cir. 1995).[1]   In an

---

[1] Davis has been called into doubt by a subsequent published panel opinion of the Court of Appeals for the Fourth Circuit, which held as follows: "Although we conclude that Edelman failed to timely file a charge of discrimination, we recognize that this failure does not deprive the court of subject matter jurisdiction." Edelman v. Lynchburg College, 228 F.3d 503, 511 (4th Cir. 2000), rev'd on other grounds, 535 U.S. 106 (2002).

abundance of caution, the undersigned will address the alleged lack of exhaustion under both standards.

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing

> Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

### B. Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the

facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendant's motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

In addition to the Complaint, the court also has before it exhibits submitted by defendant which include the two underlying charges of discrimination.

> Ordinarily, in assessing Plaintiff's allegations, the Court may only consider facts listed in the Complaint. Fed.R.Civ.P. 12(b)(6). If it takes into account facts in documents other than the Complaint, it must convert the Motion to Dismiss into a motion for summary judgment. *Id.* However, a narrow exception exists "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to the [Plaintiff's] claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993).

Greenier v. Pace, Local No. 1188, 201 F.Supp.2d 172, 177 (D.Me. 2002). The undersigned has accepted and considered such exhibits under Rule 12(b)(6), without converting defendant's Rule 12(b)(6) motion into one under Rule 56.

In responding to the Motion to Dismiss, plaintiff has submitted his own affidavit. In that affidavit, plaintiff avers that on a number of occasions during the time he was serving

on Floor Lead - - which was after the alleged discrimination manifested itself in August 2002 - - he was led to believe he would eventually be placed back in the Office Lead position. He contends that with his removal in 2005, the possibility that he could return to Office Lead disappeared, thereby giving continued life to his claim. Affidavit of Christopher L. Hyder, Plaintiff's Response, Attachment 1. Rather than convert this matter to one for summary judgment based on such affidavit - - which simply flushes out the factual allegations of the Complaint - - the undersigned has deemed such factual assertions as if they were proposed amendments to Complaint and accepted them as true.

### III. Discussion

#### A. The Issue Presented

Regardless of which Rule is applicable, the single issue presented is whether plaintiff's second cause of action is time barred for failure to file a charge of discrimination within 180 days. In arguing that the claim is not time barred, plaintiff appears to contend that the alleged violation was a "continuing violation," which would provide an exception to the 180 day statute of limitation.

#### B. Construing the Complaint in a Light Most Favorable to Plaintiff

According to the Complaint, plaintiff was summarily removed from his Office Group Lead position in August 2002. Complaint, at ¶ 26. He specifically contends that it was at that time that his job became "more difficult and adverse," and that "the level of responsibility, work environment and conditions are more difficult and adverse for the Floor Group Lead position." Complaint, at ¶ 29). Further, he contends that he was replaced by a female at such time, which is the basis for his claim of sex discrimination. Complaint ¶ 26. By way of affidavit, the factual allegations of which the court has accepted as amendments to the Complaint, plaintiff alleges that he was lead to believe on or after August 2002 that

he "could expect to be placed back in the Office Lead position," and that such prospect was only taken away when he was terminated in 2005.

Thus, for this court to now have jurisdiction over such a claim, plaintiff must have filed a charge of discrimination with the EEOC not later than March 2003; instead, it appears that plaintiff filed a charge of discrimination that concerns such event in October 2005.

Plaintiff alleges that the effects of the transfer decision did not fully manifest themselves until April 2005, when he was suspended and demoted. Complaint, at ¶ 30. Plaintiff alleges that defendant "maintained these assignments and denied Plaintiff placement back in the Office Group Lead on the basis of his sex." Id. (Complaint ¶ 30). Reading the Complaint, as amended, in a light most favorable to plaintiff, it appears that he anticipated placement back in the Office Group Lead position prior to his termination in April 2005.

### C. Title VII's 180 Day Period of Limitation

First, the court must determine the applicable period of limitation. To maintain a lawsuit based on sex discrimination, a plaintiff must file his charge of discrimination with the EEOC within 180 days of the allegedly discriminatory act. 42 U.S.C.A. § 2000e-5(e)(1). In turn, a civil action filed in federal court under Title VII may only encompass misconduct that was the subject of the timely filed charge of discrimination with the EEOC. Shehadeh v. Chesapeake & Potomac Tel. Co., 595 F.2d 711, 724 (D.C.Cir.1978). In this case, the record is undisputed that plaintiff filed two charges of discrimination in 2005: the first charge contended that he was discharged in violation of the ADA; the second charge claimed that his demotion in 2002 was unlawfully based on sex, in violation of Title VII.

Second, the court will consider the purpose of the 180 day limitations period. This rule protects defendants from having to defend against stale claims. Delaware State College v. Ricks, 449 U.S. 250, 256-57 (1980). In Hamilton v. 1st Source Bank, 928 F.2d 86 (4th Cir.

1990), the Court of Appeals for the Fourth Circuit held, as follows:

> [The 180-day limitations period is] designed not to defeat justice, but to promote it by preventing "surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."
>
> * * *
>
> Every limitations period reflects a tension between the dual goals of protecting valid claims and prohibiting pursuit of stale ones. Congress afforded potential plaintiffs under the ADEA what it considered to be a reasonable time to present claims. In setting a 180-day period in which employees could file complaints with the EEOC, Congress considered and balanced the competing policies of investigating and settling claims promptly, and protecting the aged from discrimination. We cannot second-guess its judgment.

Id., at 90.

Third, the court will consider when the 180 day period begins to run.

> Thus, in applying the statute of limitations . . . courts must first identify the alleged unlawful act. The date of that act marks the time from which the 180 days are counted. To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation, that establishes the commencement of the pertinent filing period. This circuit has faithfully followed that criterion in discriminatory discharge cases, wherein we have counted the 180 days from either the time of discharge or from the moment the employee received advance notice of the pending discharge.

Id., at 88-89. Likewise, in Chardon v. Fernandez, 454 U.S. 6 (1981), the Supreme Court held that the proper focus is on the time of the discriminatory act, not the point at which the act became painful.

Plaintiff's argument is that the full effect of the alleged sexual discrimination in 2002 did not impact him until April 2005, when the possibility of a return to the Office Lead disappeared based on a termination he contends violated the ADA. Precisely to the point, however, the Court of Appeals for the Fourth Circuit held:

> The filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision regardless of when the effects of that decision come to fruition.

Felty v. Graves-Humphreys Co., 785 F.2d 516, 518 (4th Cir. 1986). In this case, as alleged,

-8-

there were two effects: first, in August 2002, when plaintiff was transferred to Floor Lead; and second, in 2005 when the possibility of returning to Office Lead vanished. Thus, the limitations period begins when the employee has knowledge of the allegedly discriminatory act, which is when the curtain rises, not when the last adverse impact is felt, which is when the curtain falls. In this case, it is clear from plaintiff's own allegations that he knew of the alleged sex discrimination not later than August 2002 when he was transferred to Floor Lead and when he was replaced by a female. It is the opinion of the undersigned that plaintiff has failed to file a timely charge of discrimination, resulting in a lack of subject matter jurisdiction in this court under the reasoning of Davis, and the undersigned will recommend that defendant's Rule 12(b)(1) motion be granted.

In considering this matter under Rule 12(b)(6), the court will consider whether there are any exceptions, waivers, or tolling applicable to the 180 day rule that would provide relief to plaintiff. Having closely reviewed plaintiff's arguments, it appears that he is arguing that a "continuing discriminatory employment practice" should apply. Shehadeh, at 724. Where it is shown that the complained-of discriminatory practice is continuing in nature,

> the administrative complaint may be timely filed notwithstanding that the conduct impugned is comprised in part of acts lying outside the charge-filing period.

Id. The "continuing-violation" theory holds that the time period for filing administrative complaints should run from the last occurrence of the discrimination, not from the first, because "it is the ongoing program of discrimination, rather than any of its particular manifestations, that is the subject of attack." Id., at 724-25.

In applying the above considerations, plaintiff has not alleged a continuing course of sex-based discrimination, but that defendant's discriminatory inclination manifested itself first in sex discrimination and later in the form of disability discrimination. There simply is

no connection that is alleged or that could be inferred from the Complaint, or from averments deemed to be amendments, that connect the alleged Title VII violation in 2002 with the alleged ADA violation in 2005.

> It is only when a substantial nexus exists between a timely-filed claim and an otherwise time-barred claim that they may be viewed as constituting a single violation, part of which falls within the [180-day] limitations period.

Roberts v. Gadsen Mem. Hosp., 835 F.2d 793, 799-800 (11th Cir.), modified, 850 F.2d 1549 (11th Cir. 1988).

For plaintiff's 2005 charge(s) of discrimination to satisfy the exhaustion requirements for the alleged 2002 acts, plaintiff must allege facts that tend to show a "substantial nexus," a showing that requires interrelation of the claims:

> The existence of a substantial nexus turns on three factors: (1) whether the claims are related in subject matter, i.e., the alleged acts involve the same type of discrimination; (2) the frequency, i.e., whether the acts are recurring or isolated incidents; (3) permanence, i.e., whether the act was sufficiently permanent in nature so as to trigger the employee's awareness of an duty to assert her rights.

Lockett v. Wal-Mart Stores, Inc., 2000 WL 284295, *2 (S.D.Ala. 2000)(citations omitted; emphasis added). See Roberts v. Godsden Mem'l Hosp., 835 F.2d 793, 799-00 (11th Cir. 1988); Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 981 (5th Cir. 1983). Clearly, plaintiff cannot meet the "substantial nexus" test in this case because the claims involve different types of discrimination. There was little, if any, frequency and the act of transferring the plaintiff in August 2002 and replacing him with a female is sufficiently permanent in nature to trigger the plaintiff's awareness of a duty to assert his rights. The undersigned, will, respectfully recommend that defendant's motion to dismiss plaintiff's second cause of action under Rule 12(b)(6) be granted in the alternative.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's

(1)  Motion to Dismiss plaintiff's Second Cause of Action be **GRANTED** under Rule 12(b)(1), and that such claim be dismissed with prejudice; and

(2)  Motion to Dismiss plaintiff's Second Cause of Action be **GRANTED** under Rule 12(b)(6), and that such claim be dismissed with prejudice;

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: February 6, 2006

Dennis L. Howell
United States Magistrate Judge